*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *DEVYN ELLEN APPLEBEE,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )   *No. 1:17-cv-00003-NT* |
| | ) |
| *NANCY A. BERRYHILL,* | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
| *Defendant* | ) |

*REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the ALJ erred in his assessment of the plaintiff's subjective complaints and assigned improper weight to several medical source opinions. *See* Itemized Statement of Specific Errors ("Statement of Errors") (ECF No. 15) at 8-19. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Act through December 31, 2015, Finding 1, Record at 17; that she had the severe impairments of degenerative disc disease of the lumbar spine, status-post surgery x 2, lumbar radiculopathy, asthma, and hypothyroidism, Finding 3, *id*. at 18; that she had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she could occasionally climb ramps and stairs, never climb ropes, ladders, or scaffolds, could occasionally stoop, kneel, crouch, and crawl, needed to avoid concentrated exposure to vibration and even moderate exposure to hazards such as dangerous moving machinery and unprotected heights, and needed to avoid more than occasional exposure to respiratory and pulmonary irritants, Finding 5, *id*. at 20; that, considering her age (43 years old, defined as a younger individual, on her amended alleged disability onset date, November 15, 2010), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id*. at 26; and that she, therefore, had not been disabled from November 15, 2010, through the date of the decision, November 6, 2015, Finding 11, *id*. at 27.[2]  The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support

---

[2] The ALJ erroneously referenced the plaintiff's previously alleged disability onset date of January 23, 2011.  Nothing turns on the error, which I have corrected.

the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. The ALJ's Assessment of the Plaintiff's Credibility

The plaintiff first challenges the ALJ's determination of her credibility, contending that it fails to pass muster pursuant to Social Security Ruling 16-3p ("SSR 16-3p"), which took effect in March 2016, superseding Social Security Ruling 96-7p ("SSR 96-7p"). *See* Statement of Errors at 8-9. She argues, in the alternative, that if SSR 96-7p applies, the credibility determination is flawed for the same reasons pursuant to that standard. *See id*. at 9.

Subsequent to the filing of the plaintiff's statement of errors, this court held that SSR 16-3p is not retroactive, *see Coskery v. Berryhill*, No. 1:16-cv-00477-NT, 2017 WL 2417847, at *2-4 (D. Me. June 4, 2017) (rec. dec. *aff'd* July 7, 2017), and the plaintiff's counsel offered no reason at oral argument to revisit that ruling. Accordingly, SSR 96-7p, which applied as of the date of the ALJ's decision, November 6, 2015, *see* Record at 28, supplies the standard pursuant to which the supportability of the ALJ's credibility determination must be reviewed.

SSR 96-7p provides, in relevant part, that a determination "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator

gave to the individual's statements and the reasons for that weight." SSR 96-7p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 133. "The credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." *Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987). I find no reason to disturb that determination in this case.

The ALJ articulated six reasons, in addition to objective testing and examination results, for deeming the plaintiff's subjective complaints about the limiting effects of her impairments less than fully credible:

> The [plaintiff] has an inconsistent work record, reflective of minimal work orientation. Furthermore, the [plaintiff] previously filed an application for disability benefits, which an [ALJ] dismissed for failure to appear at her scheduled hearing. Dr. Waterman [treating surgeon Wayne R. Waterman, D.O.] indicated that the [plaintiff] had not complied with his recommendation to increase activity. Similarly, Mr. Marquis [treating physician's assistant ("PA") Dallas Marquis, PA-C] indicates that, by April 22, 2015, the [plaintiff] had not received pain management care in six months, and had not presented for primary care in over ten months. This is inconsistent with the [plaintiff's] complaints of debilitating pain. Moreover, despite complaints of disabling depression and anxiety, the medical evidence of record is significant for a paucity of treatment for these alleged symptoms. The fact that the claimant re-established treatment in April 2015, apparently for the sole purpose of establishing disability, further erodes the credibility of the [plaintiff's] allegations.

Record at 22-23 (citation omitted).

The plaintiff takes issue with all six rationales, asserting that none is supported by substantial evidence. *See* Statement of Errors at 9-12. The commissioner concedes that the ALJ erred in relying on the first rationale, this court having held that "it is improper to draw a negative inference based on a claimant's assertedly poor work record[.]" Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 17) at 6 (quoting *Kenney v. Colvin*, No. 2:13-cv-296-GZS, 2014 WL 3548986, at *8 (D. Me. July 17, 2014)). However, she contends that

the remaining rationales are supported by substantial evidence, as a result of which remand is unwarranted. *See id.*; *Kenney*, 2014 WL 3548986, at *8 ("[R]emand is not warranted when, as here, an [ALJ] provides other valid bases for a negative credibility determination."). I agree.

### 1. Failure To Appear at Prior Disability Hearing

The plaintiff filed prior claims for SSD and SSI benefits for which, on June 14, 2011, she requested a hearing. *See* Record at 73. She was sent a notice of hearing dated April 19, 2012, following which her then-attorney confirmed that she was aware of the time and place of the hearing and would be present. *See id.* She neither appeared nor demonstrated good cause for her non-appearance, on the basis of which, by decision dated July 13, 2012, the commissioner dismissed her hearing request, leaving in effect an adverse June 2, 2011, determination. *See id.* at 73-74. The plaintiff filed the instant SSD claim on December 26, 2012, and the instant SSI claim on October 31, 2013, initially alleging disability commencing on January 23, 2011, but amending her alleged onset date of disability to November 15, 2010. *See id.* at 15.

The plaintiff complains that the ALJ neglected to explain how her failure to appear for a disability hearing on a prior claim impacted the credibility of her allegations in this claim, arguing that the observation was "not supported by substantial evidence in this respect." Statement of Errors at 12. Yet, generally speaking, a failure to cooperate in the disability claims process is a proper basis on which to draw a negative credibility inference. *See, e.g., Bisbee v. Colvin*, No. 2:13-CV-95-GZS, 2014 WL 294495, at *5 (D. Me. Jan. 27, 2014) (claimant's failure to attend a scheduled consultative examination bore on his credibility). I perceive no error in the ALJ's partial reliance on the plaintiff's non-appearance in connection with her prior applications for SSD and SSI benefits, particularly in view of their proximity in time to the instant applications.

## 2. Dr. Waterman's Treatment Note

Following complaints of low back pain, the plaintiff had MRI testing on November 23, 2010, that revealed disc herniation at L4-L5 and L5-S1 with nerve root impingement. *See* Record at 21, 709, 711-12. On January 18, 2011, she underwent a multilevel discectomy, performed by Richard Buonocore, M.D. *See id*. at 21, 709-10. Although her condition initially improved, she began experiencing lower extremity pain and cramping and ultimately underwent interbody fusion at L4-L5 and L5-S1, performed by Dr. Waterman on October 17, 2013. *See id*. at 21-22, 665-67.

The plaintiff contends that, in stating that she "had not complied with [Dr. Waterman's] recommendation to increase activity[,]" *id*. at 22, the ALJ "misrepresent[ed] Dr. Waterman's April 2014 treatment note[.]" Statement of Errors at 10. I disagree.

On October 30, 2013, less than two weeks after her surgery, the plaintiff reported to Dr. Waterman that she had "5/10 discomfort" but was "doing much better than before surgery." *Id*. at 753. Dr. Waterman prescribed physical therapy and advised that the plaintiff "start to increase her activities as tolerated." *Id*.

However, in the note at issue, describing the plaintiff's six-month post-surgery follow-up on April 15, 2014, Dr. Waterman stated:

> At this point [the plaintiff] still says she has 5-6/10 discomfort in her low back and legs. Says she is better than before surgery but having tightness in her calves when she gets up to try to exercise. She says she has just recently started physical therapy and they are working on some hip unleveling, and she is discouraged by this because she believes they should be working on her low back. I asked her if she does daily stretching and exercise. She says other than the stretches and exercises physical therapy has given her, she is not up walking and trying to increase her ambulatory tolerance, which is something that we had hoped her to do previously to this.

*Id.* at 751. In the "recommendations" section of his note, Dr. Waterman observed:

> At this point her problem is that she is about 6 months behind the average patient since she has not done any significant physical therapy or any strengthening of her core muscles or increasing her ambulatory tolerance. My recommendation is that she get up and start walking every day starting at an eighth of a mile, then working to a quarter of a mile, half a mile, a mile, and maybe more, 2-3 miles a day to try to increase her ambulatory tolerance and stretch out her legs and her hamstrings. . . . I think that if she increases her back strength, her abdominal core strength and her ambulatory tolerance, she can reap full benefit from the surgery.

*Id*.

These passages indeed suggest that the plaintiff did not fully comply with Dr. Waterman's prescribed post-surgical exercise and physical therapy program, retarding the progress of her recovery from surgery and expected improvement in functionality. Thus, the ALJ supportably found that "Dr. Waterman indicated that the [plaintiff] had not complied with his recommendation to increase activity." Record at 22. He did not err in drawing a negative credibility inference therefrom. *See, e.g.*, *Dubriel v. Astrue*, Civil No. 08-406-B-W, 2009 WL 1938986, at *7 (D. Me. July 6, 2009) (rec. dec. *aff'd* July 24, 2009) (ALJ's finding that claimant had been "lax" and "without good excuse" in seeking treatment or following up on recommended treatment was "a proper basis upon which to discount a claimant's credibility"). At oral argument, the plaintiff's counsel contended that the plaintiff was in too much pain to comply with Dr. Waterman's recommendations, but that is not apparent from the August 15, 2014, note. The fact that Dr. Waterman, at that visit, recommended an increase in her activity level, however, suggests otherwise.

### 3. PA Marquis' Treatment Notes

The plaintiff next argues that the ALJ misrepresented April 2015 treatment notes of PA Marquis in making two of his six contested credibility findings: that she (i) had not received pain management care in six months or primary care for more than 10 months and (ii) had apparently

reestablished treatment for the sole purpose of establishing disability. *See* Statement of Errors at 10-11. I find no error.

On the first point, the plaintiff observes that PA Marquis noted that she was seeking further treatment for ongoing chronic back pain for which prescribed medication had proved ineffective, and he did not indicate that she had failed to comply with any recommended or prescribed treatment. *See id*. at 11; Record at 842. Yet, in that context, PA Marquis did note her prior gap in treatment. *See* Record at 843-44.

The plaintiff presented to PA Marquis on April 22, 2015, complaining of back pain of two weeks' duration after she stood up from a chair and heard a loud crack. *See* Record at 851. She returned for a follow-up visit on April 30, 2015. *See id*. at 841. PA Marquis indicated that he had referred her to a pain management specialist, noting that she had not seen such a specialist in more than six months and had not seen a primary care provider in more than 10 months. *See id*. at 843-44. The ALJ reasonably viewed that treatment gap as cutting against the credibility of her allegations of disabling pain. *See, e.g., Baxter v. Colvin*, No. 2:13-cv-344-GZS, 2014 WL 5326238, at *3 (D. Me. Oct. 20, 2014) (ALJ "reasonably considered the [claimant's] relatively sparse treatment inconsistent with his allegations of disabling pain").

On the second point, the plaintiff argues that PA Marquis only noted a "potential concern" that she might be seeking treatment for the sole purpose of establishing disability. Statement of Errors at 11. Yet, comments of treating or examining sources casting doubt on a claimant's credibility are fair game in an ALJ's assessment of precisely that issue. *See, e.g*., *LaFlamme v. Colvin*, Civil No. 1:14-cv-57-DBH, 2015 WL 519422, at *10-11 (D. Me. Feb. 6, 2015) (ALJ "reasonably viewed the comments" of treating physician that claimant was persistently dishonest and of consulting physician that he projected a sense of disability in excess of physical

findings/abilities "as casting doubt on the [claimant's] credibility"). In addition, PA Marquis articulated reasons for his concern. He noted that he had advised against an MRI requested by the plaintiff absent further workup or evaluation after reviewing a lumbar plain film (which showed a stable fusion and stable degenerative spondylotic changes) and receiving disability forms to fill out for the plaintiff, who had not seen her primary care physician in more than 10 months. *See* Record at 843-44, 850, 853. Against that backdrop, he indicated that he was "concerned aggressive work up and treatment is for disability claim[.]" *Id*. at 844.

### 4. Asserted Paucity of Mental Health Treatment Records

The plaintiff finally takes issue with the ALJ's finding that, "despite complaints of disabling depression and anxiety, the medical evidence of record is significant for a paucity of treatment for these alleged symptoms." Record at 22; Statement of Errors at 11. She cites numerous medical records for the proposition that she did indeed receive treatment throughout the relevant period for panic attacks, anxiety, post-traumatic stress disorder ("PTSD"), and other mental health impairments. *See* Statement of Errors at 11 (citing Record at 394-421, 423-28, 689-91, 755-71, 777-81, 787, 801-25, 828-31, 846-49). She complains that the ALJ did not mention that evidence, instead only discussing her activities of daily living and a report of an evaluation by examining consultant Edward P. Quinn, Ph.D. *See id*. (citing Record at 18-22).

As the commissioner points out, *see* Opposition at 5, however, the ALJ did mention treatment records in discussing her mental impairments, observing, "Primary care treatment notes from 2011 to the present fail to disclose any significant abnormalities with cognition, memory, attention, or focus[,]" Record at 19 (citations omitted). Indeed, on a number of occasions, the plaintiff was noted on examination to be alert and oriented, with normal thought content and affect. *See, e.g., id.* at 357, 361, 365, 368, 372, 381, 627, 632, 636. As the commissioner points out, *see*

Opposition at 5, the plaintiff also was sometimes noted to have refused or discontinued mental health treatment or to have denied feeling depressed or anxious, *see, e.g.*, Record at 376 (plaintiff denied anxiety and depression), 381 (plaintiff's anxiety noted to be improved and to "[c]ontinue[] to be controlled without medications at this time"), 758 (plaintiff stated that she was "not usually socially anxious" other than being anxious in public at the prospect of encountering individual who had raped her), 761 (plaintiff noted she had asked to discontinue a medication for anxiety/panic attacks when she felt it was no longer necessary), 767, 770 (although plaintiff was concerned about her panic attacks, she was not interested in trying most of the strategies discussed with her health care provider), 780 (plaintiff complained of increased anxiety but declined to set up an appointment with a psychiatric provider).

This constituted substantial evidence calling into question the credibility of the plaintiff's complaints of disabling anxiety and depression. To the extent that the plaintiff identifies records supporting her position, it is not the job of the court to reweigh the evidence. *See, e.g., Rodriguez*, 647 F.2d at 222 ("The Secretary may (and, under his regulations, must) take medical evidence. But the resolution of conflicts in the evidence and the determination of the ultimate question of disability is for him, not for the doctors or for the courts.").

### B.  The ALJ's Assessment of Opinion Evidence

The plaintiff argues next that the ALJ erred in giving little to no weight to the opinions of eight treating, reviewing, or examining medical sources. *See* Statement of Errors at 12-19.  I find no reversible error.[3]

---

[3] The plaintiff asserts, in passing, that an ALJ must provide "good reasons" for giving greater weight to the opinion of a nonexamining, reviewing source than to that of a treating source, noting that the ALJ gave great weight to a December 3, 2013, opinion of agency nonexamining consultant Robert Hayes, D.O., that she could perform a limited range of sedentary work.  Statement of Errors at 12.  However, the case that the plaintiff cites for this proposition, *Brown v. Astrue*, No. 2:10-cv-27-DBH, 2010 WL 5261004, at *3 (D. Me. Dec. 16, 2010) (rec. dec. *aff'd* Jan. 4, 2011), *see id.*, does not support it.  In *Brown*, this court rejected a claimant's argument that an ALJ was required to give more

### 1. D.S. Martin, D.O.

The plaintiff first contends that the ALJ erred in assigning partial weight to a May 13, 2011, opinion of her primary care physician, D.S. Martin, D.O., no weight to Dr. Martin's December 2010 assessment, and little weight to a July 2011 RFC assessment with an illegible signature that the parties agree was authored by Dr. Martin. *See* Statement of Errors at 13 & n.2; Opposition at 9 n.2.[4]

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

When a treating source's opinion is not given controlling weight, it is weighed in accordance with enumerated factors. *See id.*[5] An ALJ may give the opinion little weight or reject it, provided that he or she supplies "good reasons" for so doing. *See, e.g., id.* ("[The commissioner] will always give good reasons in [her] notice of determination or decision for the weight [she] give[s] [a claimant's] treating source's opinion."); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017) ("SSR 96-8p"), at 149

---

weight to the opinions of a treating physician than those of nonexamining sources, observing that, "[w]hile it is true, as a general proposition, that opinions of examining sources are entitled to more weight than those of non-examining sources, this is but one of several factors relevant to the evaluation of a medical source's opinion, and an [ALJ] is entitled – indeed, directed – to resolve conflicts in the medical evidence," *Brown*, 2010 WL 5261004, at *3 (citations omitted). The court found no error when the ALJ had provided the requisite good reasons for rejecting *the treating physician's* conclusions. *See id.* For the reasons discussed below, that is true in this case, as well.

[4] The parties disagree about whether an October 2011 RFC assessment with a signature the ALJ also deemed illegible was that of Dr. Martin. *Compare* Statement of Errors at 13 & n.2 *with* Opposition at 9 n.2. Because the ALJ supplied the same rationale for the assessment of both the July and October 2011 RFC assessments, it is immaterial whether the latter assessment is also that of Dr. Martin.

[5] These are: (i) examining relationship, (ii) treatment relationship, including length of the treatment relationship, frequency of examination, and nature and extent of the treatment relationship, (iii) supportability – *i.e.,* adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) specialization – *i.e.,* whether the opinion relates to the source's specialty, and (vi) other factors highlighted by the claimant. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c).

(an ALJ may reject a treating source's opinion as to RFC but "must explain why the opinion was not adopted"). Slavish discussion of the relevant factors is not required. *See, e.g., Golfieri v. Barnhart,* No. 06-14-B-W, 2006 WL 3531624, at *4 (D. Me. Dec. 6, 2006) (rec. dec., *aff'd* Dec. 29, 2006).

The plaintiff asserts that the ALJ failed to supply the requisite good reasons for the weight given to Dr. Martin's opinions. *See* Statement of Errors at 13-14. I find otherwise.

In 2010, Dr. Martin found, *inter alia*, that the plaintiff could not bend, lift, or thrust during an exacerbation of her back condition, *see* Record at 725, would require a reduced work schedule during an exacerbation, *see id.* at 726, and could expect to experience exacerbations lasting one to three days per episode one to three times every two months, *see id.* The ALJ afforded no weight to this opinion, deeming it "inconsistent with the same source's later opinion, and inconsistent with the medical evidence of record as a whole." *Id.* at 23 (citation omitted).

On May 13, 2011, following the plaintiff's January 18, 2011, microdiscectomy surgery, Dr. Martin indicated that she could carry less than five pounds, stand and walk for two to three hours a day in increments, and sit for four hours a day in one-hour increments. *See id.* at 707. He deemed her unable to work. *See id.* The ALJ gave this opinion partial weight, finding it "not entirely consistent with the medical evidence of record." *Id.* at 23. He explained:

> [P]hysical examinations routinely find that the [plaintiff's] upper extremities . . . enjoy full strength and range of motion. Contemporaneous treatment notes therefore do not support such extreme lifting and carrying restrictions. Moreover, I note that this assessment is dated shortly after the [plaintiff's] first surgery. However, I note that the above restrictions would not be inconsistent with the performance of at least a limited range of sedentary work.

*Id.*

The ALJ did not address Dr. Martin's statement that the plaintiff could not work, *see id.*; however, the determination of whether a claimant is disabled is reserved to the commissioner and, hence, entitled to no special significance, *see* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Finally, in July 2011, Dr. Martin found, *inter alia*, that the plaintiff could lift and carry less than 10 pounds and could only stand and walk, or sit, for less than two hours during a workday. *See* Record at 686. He noted that she could sit or stand for only 15 minutes at a time without needing to change position and had postural and environmental limitations as well as limitations in reaching, pushing, and pulling. *See id.* at 687-88. The ALJ gave this assessment, as well as a similar October 2011 assessment with an illegible signature, little weight, explaining:

> [T]hey are inconsistent with the medical evidence of record. For example, one form indicates the [plaintiff] cannot sit or stand for more than 15 minutes at a time. This assessment further indicates the [plaintiff] experiences unspecific limitations in reaching and pushing/pulling, but leaves blank the field in which the author is asked to provide medical findings supporting this opinion. These dire conclusions are inconsistent with stable MRI findings, generally benign physical exam results, the conservative nature of the [plaintiff's] care after October 2013, and the [plaintiff's] inconsistent adherence to medical care.

*Id.* at 24-25.

The plaintiff asserts that these were not good reasons for the weight afforded to the Martin opinions because the ALJ (i) failed to note, in deeming Dr. Martin's 2010 and May 2011 opinions inconsistent, that the 2010 opinion predated the plaintiff's first surgery, whereas the May 2011 opinion postdated it by several months, (ii) overlooked the relative consistency between the July 2011 and October 2011 opinions, (iii) described the July and October 2011 opinions as inconsistent with the conservative nature of care provided more than two years later without explaining how, (iv) ignored the plaintiff's testimony that she was without medical insurance and, thus, had limited access to medical treatment during that time period, (v) failed to note the consistency between the 2011 opinions and opinions provided by treating physicians Arthur Blake, M.D., in 2013 and

James Riley, D.O., in 2015, which he also gave little weight due to inconsistency with the record as a whole, and (vi) described "stable MRI findings" and "generally benign physical exam results" without any citation to specific instances in the record. Statement of Errors at 13-14 (quoting Record at 24-25).

For the reasons that follow, however, I find that the ALJ provided a good reason or reasons for the weight assigned to each of the Martin opinions.

1. *Dr. Martin's 2010 opinion*. Inconsistency between a treating source's opinion and the record is a valid basis on which to reject it. *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Even assuming that the ALJ erred in deeming Dr. Martin's 2010 and May 2011 opinions inconsistent with each other without acknowledging that the later opinion postdated the plaintiff's first surgery, he also deemed the 2010 opinion inconsistent with the medical evidence of record as a whole. The plaintiff's assertion that the ALJ described stable MRI results and generally benign physical examination results without citing specific instances is not well-taken. While he did not do so in explaining the weight given to the 2010 opinion, *see* Record at 23, he elsewhere discussed the longitudinal evidence bearing on the plaintiff's back impairment in detail, providing specific instances of stable MRI results and generally benign findings on physical examination, *see id*. at 21-22.[6]

---

[6] For example, the ALJ noted that, following a record review and a May 17, 2013 examination, Howard Jones, M.D., deemed the plaintiff capable (prior to her second surgery) of performing work at least at the sedentary level, *see* Record at 21, following the second surgery, Dr. Waterman found on examination on April 15, 2014, that she had 5/5 strength, negative straight leg raise testing, and only mild tenderness about the low back, *see id*. at 22, pain management specialist Shubha Raju, M.D., found on examination on September 29, 2014, that the plaintiff had normal and symmetric lower extremity strength bilaterally, with intact sensation and muscle stretch reflexes, and ambulated with a normal gait, although her range of motion was reduced and she reported pain to palpation over her lumbar paraspinal muscles, *see id*., and, when the plaintiff presented to PA Marquis in April 2015 complaining of back pain of two weeks' duration, he initially advised against an MRI, noting the plaintiff's gap in treatment and x-ray results indicating a stable post-surgical spine, *see id*. Nonetheless, the ALJ noted, the plaintiff did receive a repeat MRI of her lumbar

2.      *Dr. Martin's May 2011 opinion*.  The ALJ again relied on inconsistency with the medical evidence of record as a whole in giving this opinion partial weight.  *See id*. at 23.  In so doing, he not only implicitly referenced the detailed discussion of the longitudinal evidence discussed above, but also specifically noted that findings on examination that the plaintiff had full strength and range of motion in her upper extremities did not support the extreme limitation that the plaintiff could lift/carry less than five pounds.  *See id*.

3.      *Dr. Martin's July 2011 opinion*.  The ALJ relied not only on inconsistency with the medical record as a whole but also Dr. Martin's lack of explanation for, or quantification of, assessed limitations on reaching and pushing/pulling, a further good reason to discount the opinion to that extent.  *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings," and "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion.").  As the commissioner observes, *see* Opposition at 9-10, the fact that an opinion may be consistent with other opinions of record does not in itself undermine an ALJ's finding that it is inconsistent with the record as a whole, including findings on examination and notations in underlying treatment notes, *see, e.g., Anderson v. Astrue*, No. 1:11-cv-476-DBH, 2012 WL 5256294, at *10 (D. Me. Sept. 27, 2012) (rec. dec. *aff'd* Oct. 23, 2012) (ALJ supplied good reasons for deeming treating sources' assessments inconsistent with the record as a whole, even though he acknowledged that they were consistent with each other and tended to support claimant's allegations).  To the extent that the plaintiff argues that the ALJ ignored her lack of medical insurance in considering her adherence to treatment, she testified at hearing that she

---

spine on June 16, 2015, which revealed degenerative disc disease and facet joint osteoarthritis at multiple levels but no significant stenosis, neural foraminal narrowing, or mass effect upon the neural elements.  *See id*.

received free care from the Penobscot Community Health Center, but failed to explain why a lack of insurance would have prohibited her from obtaining medical treatment through this facility. *See* Record at 48-51.

### 2. Arthur Blake, M.D.

Dr. Blake, also a treating physician, completed three functional capacity forms for the plaintiff. In an undated assessment, he opined that the plaintiff could only sit, stand, and walk for 30 minutes at a time, would need frequent changes in position due to pain, could only occasionally lift/carry five pounds, could only occasionally bend with support or drive, and could never kneel or crouch. *See* Record at 680. In a form dated October 31, 2011, he added limitations (no climbing or crawling and only occasional balancing) and indicated that the lifting restriction was "likely lifelong." *Id*. at 682-83. He assessed essentially the same limitations in a form dated February 27, 2013. *See id*. at 746.

The ALJ afforded Dr. Blake's opinions little weight, explaining that Dr. Blake provided "no objective findings in support of his conclusion" and that his assessment was "inconsistent with the medical evidence of record as a whole." *Id.* at 24. In particular, he found that Dr. Blake's findings were undercut by the fact that the plaintiff's "MRI studies were unrevealing following her second surgery, and physical examinations have generally been normal." *Id.*

The plaintiff complains that the ALJ failed to note (i) the consistency between the Blake opinions, the earlier opinions of Dr. Martin, and the later opinions of Dr. Riley or (ii) the fact that Dr. Blake's opinions predated her second surgery. *See* Statement of Errors at 14-15.

As noted above, however, the fact that treating physicians' opinions are consistent with each other does not foreclose an ALJ from deeming them inconsistent with the underlying medical and other evidence of record. *See, e.g., Anderson*, 2012 WL 5256294, at *10. While Dr. Blake's

opinions predated the plaintiff's second surgery, the ALJ did not err in noting their inconsistency with objective evidence of her condition following that surgery.

### 3.  James Riley, D.O., and Teddy Kajkowski, P.T.

On referral from Dr. Riley, physical therapist ("PT") Teddy Kajkowski, P.T., evaluated the plaintiff and completed a physical RFC questionnaire dated June 22, 2015, that Dr. Riley co-signed the following day.  *See* Record at 879-89.  PT Kajkowski concluded that the plaintiff's back condition precluded work and recreation, that she was in constant pain, and that any amount of lifting, walking, or standing resulted in increased pain.  *See id.* at 883.  He found that she could sit or stand for only five to 10 minutes at a time, would need to walk every 10 minutes, could only occasionally lift/carry less than 10 pounds, would need to be absent from work more than three times per month, and would need to lie down at unpredictable intervals during a work shift.  *See id.* at 886-88.

The ALJ gave "little weight to the co-signed opinion statement" of Dr. Riley and PT Kajkowski, explaining:

> This assessment is not consistent with the medical evidence of record as a whole. For example, the [plaintiff] is limited to sitting and standing no more than ten minutes at a time.  This is inconsistent with the stable findings on MRI as well as the generally benign nature of physical exam findings.  The authors also opine that the [plaintiff] would be absent from work more than three times per month, but offer no evidentiary support for such a conclusion.  Mr. Kajkowski's physical examination was significant for reduced strength and range of motion, along with unspecified positive straight leg raise testing.  However, Mr. Kajkowski is not an acceptable medical source.  His exam findings are, moreover, inconsistent with all other examinations, including that of Dr. Riley himself.  Because this statement is generally inconsistent with the medical evidence of record, the [plaintiff's] activities of daily living, and the conservative nature of the [plaintiff's] care after October 2013, I afford these opinions little weight.

*Id*. at 25 (citations omitted).

The plaintiff asserts that this determination, as well, is unsupported by substantial evidence because the ALJ (i) failed to explain how the fact that PT Kajkowski is not an "acceptable medical source" detracted from his examination findings, (ii) overlooked multiple continuing problems noted in the referenced MRI, (iii) inaccurately described Dr. Riley's contemporaneous physical examination findings as "benign" and inconsistent with the Riley opinion, and (iv) did not explain how her activities of daily living, which he discussed only in the section of his decision bearing on her mental health impairments, were inconsistent with the opinion. *See* Statement of Errors at 15-16.

As the commissioner rejoins, *see* Opposition at 15-16, the ALJ supportably deemed the Kajkowski/Riley opinion inconsistent with both objective medical evidence of record and the plaintiff's activities of daily living. As the ALJ had observed elsewhere in his decision, the MRI at issue revealed degenerative disc disease and facet joint osteoarthritis at multiple levels but no significant stenosis or neural foraminal narrowing and no mass effect upon the neural elements, *see id*. at 22, 876-78, and the plaintiff told examining psychologist Edward P. Quinn, Ph.D., on May 1, 2015, that she continued to cook, perform household chores, shop, and engage in word search puzzles for entertainment, *see id*. at 18-19, 857. Finally, the ALJ reasonably characterized PT Kajkowski's findings on examination as inconsistent with those of Dr. Riley himself. On examination of the plaintiff on June 5, 2015, Dr. Riley noted thoracic lumbar tension but otherwise normal findings, including negative bilateral straight leg raising with normal reflexes. *See id*. at 895. On examination on June 15, 2015, Dr. Riley noted abnormal findings of only mild kypho-scoliosis and widespread thoracic lumbar tension and tenderness. *See id*. at 892.

#### 4. James Boscardin, M.D.

The ALJ also considered an April 13, 2012, opinion of third-party nonexamining consultant James Boscardin, M.D., prepared for an insurance company in connection with a separate matter. *See* Record at 25; 728-32. Dr. Boscardin opined that, from January 2011 through August 16, 2011, the plaintiff was precluded from performing even sedentary activities. *See id.* at 732. He found that, for the period after August 16, 2011, she was "capable minimally of a sedentary level of activity with sitting being limited to an hour at a time" and with frequent changes of position and alternation of sitting with periods of standing and walking. *Id.*

The ALJ gave this opinion no weight, noting that Dr. Boscardin explicitly stated that he had not examined the plaintiff and considered only 14 documents, at least four of which were opinion statements and several others of which were unrelated to the plaintiff's low back impairment. *See id.* at 25. As a result, he explained, "there appears an insufficient evidentiary bas[is] upon which to base such dire conclusions." *Id.* Further, he noted that he found Dr. Boscardin's assessment "inconsistent with the medical evidence of record as a whole." *Id.*

The plaintiff asserts that the ALJ's handling of the Boscardin opinion was unsupported by substantial evidence because he failed to mention that Dr. Boscardin contacted several of the sources who provided opinions and medical records for follow-up interviews or that Dr. Boscardin performed his review for her long-term disability insurer in an adversarial proceeding. *See* Statement of Errors at 18. She adds that the ALJ misleadingly stated that at least four of the 14 documents were opinions without mentioning the substantive quality and quantity of the other records Dr. Boscardin reviewed. *See id.* The ALJ was not required to provide good reasons for the weight assigned to the opinion of Dr. Boscardin, a nonexamining source. *Compare, e.g.*, 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Nonetheless, he did so.

As the commissioner notes, *see* Opposition at 16-17, the ALJ rejected the Boscardin opinion on two valid bases: that Dr. Boscardin was a nonexamining source and that his opinion was inconsistent with the medical evidence of record as a whole, *see* Record at 25; 20 C.F.R. §§ 404.1527(c)(1), (4), 416.927(c)(1), (4) (commissioner generally will give more weight to opinions of examining sources and opinions that are consistent with the record). In addition, as the commissioner points out, *see* Opposition at 16, there is support in the Boscardin opinion itself for the ALJ's finding that it lacked a sufficient evidentiary basis, Dr. Boscardin having stated that "a preclusion of even sedentary activities was reasonable through 8/16/11, although it was not well documented within the chart that [the plaintiff] had solid objective findings." Record at 732.

The plaintiff, thus, fails to show reversible error in the handling of the Boscardin opinion.

### 5. Edward P. Quinn, Ph.D.

The ALJ also considered and gave no weight to a May 4, 2015, opinion of examining psychologist Dr. Quinn. *See id.* at 25, 870-71. Dr. Quinn stated, *inter alia*, that the plaintiff was "likely to have substantial difficulties relating to others," "likely to have great anxiety in occupational settings, particularly where her work may be critiqued or judged by a supervisor[,]" "likely to have difficulties dealing with stressors[,]" "likely to have difficulties with persistence due to the level of her depression[,]" and, "[g]iven her agoraphobia, . . . would have difficulties functioning in any setting outside of her residence." *Id.* at 870-71. He added, "it is highly unlikely that [the plaintiff] would be successful functioning in any occupational setting at this time." *Id.* at 871.

The ALJ explained that he afforded the Quinn opinion no weight for several reasons, including that Dr. Quinn (i) examined the plaintiff on a one-time basis, (ii) made diagnoses, including but not limited to dissociative disorder, that were not supported by any contemporaneous

treatment notes, (iii) diagnosed undifferentiated somatoform disorder, although it was "entirely inconsistent" with the plaintiff's medical history, (iv) made a "dire assessment" that was inconsistent with his own findings on the WAIS-IV and mental status examination, (v) assessed "vague and, therefore, unreviewable" limitations that the plaintiff was "likely to have difficulties" in a number of areas, and (vi) made no mention of the referring source, although the evaluation appeared to have been purchased by the plaintiff's representative for the purpose of advancing his client's application for disability benefits. *Id*. at 25-26. Finally, the ALJ explained, he found the Quinn assessment inconsistent with the medical evidence of record as a whole. *See id*. at 26.

The plaintiff contends the ALJ's disposition of the Quinn opinion, as well, was unsupported by substantial evidence because he (i) ignored extensive evidence of her mental health treatment, (ii) did not make specific findings as to how Dr. Quinn's opinion was inconsistent with his testing results, (iii) characterized the Quinn limitations as vague, yet posed a hypothetical question to the vocational expert at hearing based on the Quinn report, and (iv) erred in relying on the plaintiff's attorney's involvement in obtaining the consultative examination. *See* Statement of Errors at 19.

As was true with respect to the Boscardin opinion, the ALJ was not required to provide good reasons for the weight given to the opinion of Dr. Quinn, a one-time examining consultant. *See, e.g., Bowie v. Colvin,* No. 2:12-cv-205-DBH, 2013 WL 1912913, at *7 (D. Me. Mar. 31, 2013) (rec. dec. *aff'd* May 7, 2013) ("A onetime examining consultant is not a 'treating source' and therefore is not subject to the 'treating source' rule, pursuant to which a medical opinion may be rejected only for good reasons.") (citation and internal quotation marks omitted). Nevertheless, the ALJ did so.

He reasonably rejected the Quinn opinion on the basis of its inconsistency with the record evidence as a whole, which, as discussed above, included a number of normal findings on mental

status examination and instances in which the plaintiff refused or discontinued mental health treatment or denied feeling depressed or anxious, as well as Dr. Quinn's use of vague, qualified language, *see, e.g., Sheldon v. Colvin*, Civil No. 2:13-CV-315-DBH, 2014 WL 3533376, at \*5 (D. Me. July 15, 2014) (statements by examining consultants employing qualifiers such as "may" and "likely" "do not always translate actual or expected difficulties into specific limitations" and, in that respect, are not "RFC opinions as defined in 20 C.F.R. §§ 404.1545(c) and 416.945(c)"). That the ALJ posed hypothetical questions to the vocational expert based on the Quinn opinion, *see* Record at 65-67, did not foreclose his ultimate, supportable finding that the opinion was vague.

No more was required.

### 6. Charles Hayes, LCPC, and Rachael Wardwell, PA-C

The ALJ also considered, and afforded little weight to, the opinions of two additional treating sources, licensed counselor ("LC") Charles Hayes, L.C.P.C., and physician's assistant ("PA") Rachael Wardwell, PA-C. *See* Record at 24. LC Hayes completed a mental RFC questionnaire dated February 19, 2015, in which he indicated that the plaintiff was moderately to substantially impaired in a number of abilities, including her ability to maintain concentration for extended periods, work with/near others, maintain regular attendance, and maintain productivity/sustain activity. *See id*. at 804-05.

PA Wardwell authored a letter dated June 26, 2013, (mistakenly set forth by the ALJ as June 26, 2012), in which she stated, *inter alia*, that the plaintiff was unable to sit, stand, or walk for more than 30 minutes at a time due to pain, could not walk or stand more than once a day, and, due to her need for frequent changes in position and her inability to tolerate sitting or standing for long periods of time, was "unable to work at a sitting or standing job." *Id*. at 677. She stated that the plaintiff had "trialed multiple medications and had injections without improvement" and was

then waiting for an appointment with surgeon Dr. Waterman and the chronic pain clinic. *Id*. She

noted: "The hope is after these appointments there will be a plan for pain control and at that time

she may be able to work but currently as she is at this time [she] is unable to work in my opinion."

*Id*. PA Wardwell also authored a letter dated July 11, 2012, stating: "at this time this patient is

unable to work due to chronic pain in her lower back and right leg radiculopathy." *Id*. at 678.

The ALJ noted that neither LC Hayes nor PA Wardwell was an "acceptable medical

source." *Id*. at 24. He added that (i) the Hayes assessment was "inconsistent with

contemporaneous mental health records that indicate generally normal mental status exams[,]"

(ii) no other treating source to whom the plaintiff had presented over the prior six years "recorded

symptoms consistent with Mr. Hayes' dire assessment[,]" (iii) the Hayes limitations were

"inconsistent with the conservative nature of mental health treatment, which includes no inpatient

hospitalizations, crisis stabilization care, or partial hospitalization involvement[,]" and (iv) LC

Hayes' assessment was "also inconsistent with the [plaintiff's] activities of daily living[.]" *Id*.

The ALJ deemed PA Wardwell's assessment "not consistent with the medical evidence of

record or the [plaintiff's activities[,]" explaining:

> For example, she states that the [plaintiff] cannot walk or stand more than one time
> per day. I find this limitation is not credible. Finally, Ms. Wardwell indicates that
> the [plaintiff] may be able to work following improved pain control. The [plaintiff]
> underwent her second back surgery four months after Ms. Wardwell drafted her
> assessment. I find that the medical evidence of record supports a finding that the
> [plaintiff] did experience improvement in low back pain following this
> intervention. For example, she reported in April 2015 that she had only been
> experiencing low back pain for two weeks following an exacerbation. The
> [plaintiff] also ceased primary care and pain management care almost immediately
> after surgery, consistent with improvement.

*Id*. He gave no weight to PA Wardwell's July 2012 letter indicating that the plaintiff could not

work, noting that the issue of disability was reserved to the commissioner and that the July 2012

assessment suffered from many of the same defects as the July 2013 assessment. *See id*.

The plaintiff contends that the ALJ's handling of the Hayes opinion was unsupported by substantial evidence because he (i) ignored extensive evidence of mental health treatment, (ii) failed to explain how the plaintiff's activities of daily living were inconsistent with LC Hayes' limitations, and (iii) failed to discuss any factors relevant to the evaluation of the opinions of "other sources" as set forth in Social Security Ruling 06-03p ("SSR 06-03p"), apart from stating that LC Hayes was not an acceptable medical source. Statement of Errors at 16-17. These criticisms fall wide of the mark.

SSR 06-03p provides, in relevant part, that the factors relevant to the evaluation of the opinions of non-acceptable medical sources are the same as those relevant to the evaluation of those of acceptable source medical sources. *See* SSR 06-03p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2017), at 330. The ALJ accorded the Hayes opinion little weight on the basis of its inconsistency with the record evidence as a whole, including findings on mental status examination and activities of daily living. *See* Record at 24. As noted above, inconsistency with the record is a valid basis on which to discount the opinion of an acceptable medical source, including a treating physician. *See, e.g.*, 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). Further, pursuant to SSR 06-03p, "[t]he fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source[.]'" SSR 06-03p at 330.

The ALJ's findings of inconsistency, in turn, were adequately explained pursuant to SSR 06-03p, which states that an ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination

or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03p at 331. The ALJ plainly alluded to his findings elsewhere in his detailed discussion of the longitudinal evidence regarding the plaintiff's activities of daily living and normal mental status examinations. That was all that was required.

The plaintiff finally asserts that the ALJ's handling of the June 2013 Wardwell opinion is unsupported by substantial evidence because he relied on records indicating subsequent post-surgical improvement without explaining how they were relevant to an opinion predating that surgery and ignored the consistency of the Wardwell opinion with other opinions of record. *See* Statement of Errors at 17-18. These points also fall short.

As noted above, the fact that treating physicians' opinions are consistent with each other does not foreclose an ALJ from deeming them inconsistent with the underlying medical and other evidence of record. *See, e.g., Anderson*, 2012 WL 5256294, at *10. The ALJ reasonably found that, because the plaintiff's pain improved following her second surgery, she would not have the limitations assessed by PA Wardwell. Moreover, to the extent that PA Wardwell found the plaintiff unable to work, *see* Record at 678, that decision was reserved to the commissioner. *See* C.F.R. §§ 404.1527(d), 416.927(d).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.


### ___NOTICE___

***A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which __de novo__ review by the district court is sought, together with a supporting memorandum,***

*within fourteen (14) days after being served with a copy thereof.   A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de novo</u> review by the district court and to appeal the district court's order.*

Dated this 20th day of December, 2017.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge